**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

DAN BOGER on behalf of himself and others similarly situated,

Plaintiff,

v.

TRINITY HEATING & AIR, INC. D/B/A TRINITY SOLAR and MEDIA MIX 365, LLC

Defendants.

Case No.

# CLASS ACTION COMPLAINT

## Preliminary Statement

1. Plaintiff Dan Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Trinity Heating & Air, Inc. d/b/a Trinity Solar ("TRINITY SOLAR") hired the co-defendant, Media Mix 365, LLC, who made telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising Trinity goods and services using an automated dialing system, which is prohibited by the TCPA.

3. Media Mix 365, LLC made these calls because of an agreement with Trinity Solar, who hired Media Mix 365, LLC to generate business through telemarketing, and maintained interim control over their actions.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Dan Boger is a resident of the state of Maryland and this District.

7. Defendant Trinity Solar is a corporation with its principal place of business in New Jersey, and conducts business in this District, including through the installation of solar solutions, as it attempted to do with the Plaintiff.

8. Defendant Media Mix 365, LLC is a California limited liability company with its principal place of business in Newport Beach, CA and conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff.

**Jurisdiction & Venue**

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made into this District.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

18. Trinity Solar is one of the nation's leading solar installation companies.

19. To generate business through sales, Trinity Solar relies on telemarketing.

20. However, Trinity Solar's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

21. One of TRINITY SOLAR's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

22. One of Trinity Solar's new strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer.

23. Trinity Solar engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

24. Through this method, Trinity Solar shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Boger

25. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

26. Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

27. Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

28. Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Media Mix 365 placed an automated telemarketing calls to him on at least the following dates:

A. January 31, 2017

B. May 11, 2017

29. When the call was answered, there was a lengthy pause and a click before a live individual came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

30. In fact, Media Mix 365's owner has endorsed the use of the Ytel dialing system, which is an ATDS. *See* http://hello.ytel.com/hubfs/Sales_Resources/About_Us.pdf?t=1495485926348 (Last Visited June 21, 2017)

31. Mr. Boger also received a call from Media Mix 365 on January 30, 2017. Based on the foregoing, it is also believed that this call was made with an ATDS.

32. When the Plaintiff finally connected with a live individual, he was solicited for services from "Solar Research Group".

33. That company is believed to not exist, and instead it is a pseudonym that Media Mix 365 uses when engaging in autodialing telemarketing, since the calls are unwanted solicitations, and as in the case of Mr. Boger, are also made to individuals on the National Do Not Call Registry.

34. On the May 11, 2017 call, Mr. Boger spoke with a "Rudy", who asked him some prequalification questions and during the same call, connected an employee of Trinity Solar who identified herself as "Mary".

35. "Mary" proceeded to attempt to sign Mr. Boger up as a new customer for Trinity Solar, and gave her e-mails address as Mary.Jordan@Trinity-Solar.com before the call was terminated.

36. The Caller ID that displayed on the telemarketing call was (800) 283-0922.

37. Other individuals have complained about receiving solicitation calls from the same company:

> "Feb. 14-17, 2017 - 5 live calls from Solar Research Group from "410-476-2211, Trappe MD" to by landline that is on the national DNC list. 1. Feb. 14, 2017, 1:48 PM - missed call 2. Feb. 15, 2017, 1:22 PM - see below 3. Feb. 15, 2017, 4:10 PM - see below 4. Feb. 16, 2017, 11:19 AM - missed call 5. Feb. 17, 2017, 2:31 PM - see below. In the first call, "John" started out saying he was calling from a recorded line for the "Solar Research Group". He read my street address correctly. He asked the usual solar qualifying questions, plus questions about mortgage payments, is my credit score over 700, and whether I had a bankruptcy. Call 3 was a similar call from "Anna." Call 5 was a similar call from "Darrell." They were not successful transferring me to an actual solar company agent. I noted clapping in the background during Call 5, which "Darrell" said was the encouragement they give each other when they are successful in getting a transfer." *Caller: Solar Research Group*
>
> "Same as what was said (referencing the above complaint)" *Caller: Solar Research Group*

*See* http://800notes.com/Phone.aspx/1-800-283-0922 (last visited June 21, 2017).

38. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

39. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

40. Finally, the calls were believed to be made without the consent of the called party. In fact, Mr. Boger contacted Trinity Solar and Media Mix 365 prior to the filing of the lawsuit, and did not receive any evidence that he consented to receive these calls.

Trinity Solar's Liability and its Arrangement with Media Mix 365

41. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

42. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

43. In that ruling, the FCC instructed that sellers such as Trinity Solar may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

44. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

45. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

46. Trinity Solar is directly liable for the Media Mix 365 telemarketing calls because it actively participated in those calls by being a part of the actual calling.

47. In fact, as described above, employees of Trinity participated in the actual telemarketing calls, including in the May 2017 call to the Plaintiff.

48. By engaging Media Mix 365 to make calls on behalf of its agents to generate new business, Trinity Solar "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

49. Moreover, Trinity Solar maintained interim control over Media Mix 365's actions.

50. For example, Trinity Solar had absolute control over whether, and under what circumstances, it would accept a customer.

51. Furthermore, Trinity Solar had day-to-day control over Media Mix 365's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Trinity

Solar. Trinity Solar failed to make such an instruction to Media Mix 365, and as a result, is liable for Media Mix 365's conduct.

52. Additionally, Trinity Solar restricted the geographic location that Media Mix 365 could promote Trinity Solar.

53. Trinity Solar also gave interim instructions to Media Mix 365 by providing the volume of calling and leads it would purchase.

54. Media Mix 365 transferred customer information, including the directly to Trinity Solar. Thus, the company that Trinity Solar hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Trinity Solar hired is an apparent agent of Trinity Solar.

55. For example, Trinity Solar is liable for Media Mix 365's conduct because during the May 2017 call to the Plaintiff, Media Mix 365 provided a telephone number to "Mary" at Trinity Solar, but no other information about the Plaintiff over the phone. However, during the conversation with the Plaintiff, "Mary" had Mr. Boger's address and e-mail address. As a result, Media Mix 365 must have had the "ability . . . to enter consumer information into the seller's sales or customer systems" of Trinity Solar.

56. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

57. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

58. The class of persons Plaintiff proposes to represent are tentatively defined as:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

59. Excluded from the class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

60. The class as defined above is identifiable through phone records and phone number databases.

61. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

62. Plaintiff is a member of the proposed class.

63. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

b. Whether Defendants placed calls using an automatic telephone dialing system;

c. Whether Trinity Solar is vicariously liable for the conduct of Media Mix 365;

d. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

e. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

64. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by the defendants and are based on the same legal and remedial theories.

65. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

66. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

67. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for

small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

68. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

69. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## <u>Causes of Action</u>

### Count One:
### Violation of the TCPA's Automated Calling provisions

70. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

72. As a result of the Defendants violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

73. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Count Two:**
**Violation of the Maryland Telephone Consumer Protection Act**

74. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA") which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated to the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

76. As a result of the Defendants violations of the Maryland TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14-3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants' actions complained of herein violate the TCPA;

E. An order enjoining Defendants from making automated or pre-recorded calls;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Attorney's Fees as allowed by the Maryland Telephone Consumer Protection Act;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

/s/ Stephen H. Ring

Stephen H. Ring, Esq. (Atty No. 00405)
STEPHEN H. RING, PC
9901 Belward Campus Drive, Suite 175
Rockville, Maryland 20850
(301) 563-9249
shr@ringlaw.us

Edward A. Broderick
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 680-0049
ted@broderick-law.com
*Subject to Pro Hac Vice*